## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 17-22614-CIV-GAYLES

IRA J. KURZBAN, MAGDA M. DAVIS,
and MICHAEL G. LEVY,

       Plaintiffs,

v.

NATIONAL SECURITY AGENCY, et al.,

       Defendants.

_____/

## **ORDER**

    **THIS CAUSE** comes before the Court upon Defendants' Motion for Summary Judgment (the "Motion"). [ECF No. 45]. The Court has reviewed the Motion and the record and is otherwise fully advised.

    This action stems from Ira J. Kurzban's ("Kurzban"), Magda M. Davis's ("Davis"), and Michael G. Levy's ("Levy") (collectively "Plaintiffs") requests for records from the Defense Intelligence Agency ("DIA"), the Federal Bureau of Investigation ("FBI"), the Central Intelligence Agency ("CIA"), and the National Security Agency ("NSA") (collectively the "Defendants")[1] under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., and Privacy Act, 5 U.S.C. § 552a, et seq. For the reasons set forth below, the Court finds that Defendants properly processed Plaintiffs' FOIA and Privacy Act requests and, therefore, grants the Motion.

---

[1] Plaintiffs also named as Defendants in their official capacities: James N. Mattis, Secretary, U.S. Department of Defense; Michael S. Rogers, Director, National Security Agency and Chief, Central Security Service; Vincent R. Steward, Director, Defense Intelligence Agency; David J. Sherman, Chief of Strategy, Plans, and Policy, National Security Agency; Mike Pompeo, Director, Central Intelligence Agency; and Christopher A. Wray, Director, Federal Bureau of Investigation.

## I.      Overview of FOIA and the Privacy Act

Both FOIA and the Privacy Act provide "a requester with access to federal agency records about the requester and create a private cause of action when an agency fails to comply with a valid request." *Cabezras v. FBI*, 19-cv-145, 2022 WL 898789 at *2 (D.D.C. Mar. 28, 2022) (internal quotation omitted). "While the Privacy Act was designed to provide individuals with more control over the gathering, dissemination, and accuracy of agency information about themselves, FOIA was intended to increase the public's access to governmental information and was drafted with a strong presumption for disclosure to allow public scrutiny of government processes." *Pierce v. Dep't of U.S. Air Force*, 512 F.3d 184, 191 (5th Cir. 2007).

Under FOIA, federal agencies are required "upon a request for records that reasonably describes documents held by that agency, to make those documents promptly available unless the information within the records is protected from disclosure by a statutory exemption." *Lee v. U.S. Attorney for S. Dist. of Fla.*, 289 F. App'x 377, 380 (11th Cir. 2008). FOIA exemptions include matters that are:

> (1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;
> . . .
>
> (3) specifically exempted from disclosure by statute (other than section 552b of this title), if that statute—
> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.
> . . .
>
> (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
>
> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings . . . (C) could

reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institute which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose technique and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. . .

5 U.S.C. § 552(b) (hereafter referenced as "FOIA Exemption #").

The Privacy Act requires that "[e]ach agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him." 5 U.S.C. § 552a(d)(1).

Like FOIA, the Privacy Act includes exemptions from disclosure. Relevant here are the following:

**(j) General exemptions**.—The head of any agency may promulgate rules, in accordance with the requirements . . . of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c)(1), and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is—

(1) maintained by the Central Intelligence Agency; or

(2) maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage

3

of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a(j) ("PA Exemption J).

(k) Specific exemption.—The head of any agency may promulgate rules, in accordance with the requirements . . . of sections 553(b)(1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from subsections (c)(3), (d), (e)(1), (e)(4)(G), (H), and (l) and (f) of this section if the system of records is—

(1) subject to the provisions of [FOIA Exemption 1];

(2) investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of this section: *Provided, however*, That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence.

5 U.S.C. § 552a(k) ("PA Exemption K").

In addition to the FOIA and PA exemptions, agencies may issue what is known as a *Glomar*[2] response, "by which an agency 'neither confirms nor denies the existence of the documents sought in the FOIA request.'" *Miccosukee Tribe of Indians of Florida v. U.S. Dep't. of Justice*, 103 F. Supp. 3d 1314, 1324 (S.D. Fla 2015) (quoting *Office of the Capital Collateral Counsel, North Region of Fla., ex rel. Mordenti v. Dep't of Justice*, 331 F.3d 799, 801 n.3 (11th Cir. 2003)). "A *Glomar* response, however, is permitted only when confirming or denying the existence of records would itself cause harm cognizable under an FOIA exception." *Id.* (internal citation and quotation omitted). The agency "must justify the *Glomar* response based on general exemption review standards established in non-*Glomar* cases." *Id.* (internal quotation omitted).

---

[2] The term derives from *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976), in which the court considered the CIA's refusal to disclose whether it had records about a vessel named the *Glomar Explorer*.

## II.      BACKGROUND[3]

### A.      The Plaintiffs

As relevant here, Kurzban was the United States counsel for the government of Haiti from 1991 to 2004. [ECF No. 56 ¶ 32]. Levy, during the same time period, advocated for humanitarian and political causes in Haiti. *Id.* In the course of their work, Kurzban and Levy communicated with representatives of the United States government who were involved in the United States' foreign policy towards Haiti. *Id.* Also, Kurzban and Davis were the subjects of a series of threats by an anti-Fidel Castro group and other individuals between 1994 and 1996. *Id.* ¶ 33. During the FBI's investigation of these threats, Davis submitted recordings and descriptions of the threats to the FBI. *Id.*

In addition to that referenced above, Kurzban has been involved in several activities for which he believes the Defendants would have maintained records including: (1) involvement in the Vietnam antiwar movement; (2) protests involving African American football players at Syracuse University in the late 1960s; (3) work for the Republic of Cuba; (4) work on behalf of Haitian refugees; (5) work on behalf of the Republic of Haiti; and (6) representation of an applicant for asylum in a high profile criminal case. *See* Kurzban Affidavit.

---

[3] The relevant undisputed facts are taken from Defendants' Statement of Material Uncontroverted Facts [ECF No. 43], Plaintiff's Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment [ECF No. 56], and the exhibits attached to those documents. The attached exhibits include the declarations of Renee L. Morris, Senior FOIA Intelligence Officer within the DIA, which is part of the Department of Defense (the "Morris Declaration"), [ECF No. 43-1]; David M. Hardy, Section Chief of the Record/Information Dissemination Section, Information Management Division , at the FBI" in Winchester, Virginia (the "Hardy Declaration"), [ECF No. 43-2]; Antoinette B. Shiner, Information Review Officer for the CIA's Litigation Information Review Office (the "Shiner Declaration"), [ECF No. 43-4]; Steven E. Thompson, Chief of Policy, Performance, and Exports, at the NSA (the "Thompson Declaration"), [ECF No. 43-5]; Eric F. Stein, Director of the Office of Information Programs and Services of the United States Department of State (the "Stein Declaration"), [ECF No. 43-6]; the Supplemental Declaration of Renee L. Morris (the "Morris Supplemental Declaration"), [ECF No. 64-1]; the Second Declaration of David M. Hardy (the "Second Hardy Declaration"), [ECF No. 64-2]; and the affidavits of Plaintiff Levy (the "Levy Affidavit"), [ECF No. 55-1], and Plaintiff Davis (the "Davis Affidavit"), [ECF No. 55-2]. The Court also considered the classified Declaration of David M. Hardy (the "Classified Hardy Declaration") and the Affidavit of Plaintiff Kurzban (the "Kurzban Affidavit"), submitted to the Court for in camera review.

B.      **The Requests**

1.      **DIA**

On February 1, 2016, the DIA received Privacy Act requests from Plaintiffs seeking records about themselves contained in the DIA's system of records known as "Security and Counterintelligence Records." [ECF No. 43 ¶ 1]. The DIA determined that two of its offices—the Office of Security and the Directorate of Operations—were most likely to have records responsive to Plaintiffs' requests. *Id.* Those offices conducted a search using Plaintiffs' full names but found no responsive records. *Id.*

In July 2016, the DIA advised Plaintiffs that it could not conduct an accurate search without their social security numbers. *Id.* at ¶ 2. On January 3, 2018, Plaintiffs provided the DIA with their dates of birth, social security numbers and specified date ranges for the search. *Id.* at ¶ 3. With this information, the DIA determined that its Records Message Traffic ("RMT") database was most likely to contain responsive records. *Id.* RMT is a repository of electronic message traffic[4] and holds more than 70 million messages addressed to or originated by the DIA. *Id.* The search for Plaintiffs' names in RMT produced no responsive records. *Id.* DIA then had its Office of Human Resources ("OHR")—the office that maintains agency administrative and personnel records—search its system for records responsive to Plaintiffs' names. *Id.* at ¶ 4. No responsive records were found. *Id.* The DIA later conducted a second search of RMT using Plaintiffs' full names and social security numbers. *Id.* ¶ 4-5. Again, no responsive records were found. *Id.*

Before ending its efforts, the DIA searched three additional databases for records using Plaintiffs' full names and social security numbers including: (1) Collection Operations Requirements Exploration Discovery (CORE-D), which can access 6.76 million records; (2)

---

[4] "Message Traffic" is a term of art in the intelligence community that refers to multiple forms of intelligence reporting, including Intelligence Information Reports and finished intelligence products. It is not electronic mail. *See* the Morris Supplemental Declaration. [ECF No. 64-1 ¶ 5].

Collection Requirements Analysis Tool for the Enterprise (CRATE), which contains approximately 3.25 billion records; and (3) Multi-domain Administrative Graphical Interface (MAGIC).[5] *Id.* ¶ 6. These final searches produced no responsive records. *Id.*

### 2. FBI

On October 13, 2017, Plaintiffs submitted FOIA/Privacy Act requests to the FBI requesting all records concerning them for the time period encompassing their dates of birth to the present. *Id.* ¶ 7. The FBI searched the Central Records System (CRS) index[6] and the Electronic Surveillance (ELSUR) indices which contain records related to electronic surveillance sought, administered, and/or conducted by the FBI since January 1, 1960.[7] The FBI found no responsive records for Levy. *Id.* ¶¶ 7, 9. With respect to Kurzban's and Magda's requests, the FBI processed 461 responsive pages of which 211 were released in full, 277 were released in part, and 23 were withheld in full. *Id.* ¶ 25. Of the 23 pages withheld in full, only 15 were not duplicates of pages processed elsewhere. [ECF No. 43-2 ¶ 141].

The FBI withheld the following responsive records:

1. Records compiled in the course of the FBI's investigation of bomb threats, fraud claims, and national security matters. [ECF No. 43 ¶ 28]. The FBI withheld these records pursuant to PA Exemptions J and K. *Id.* ¶ 27. Specifically, the FBI cited to 28 C.F.R. § 16.96(a)(1), which exempts FBI law enforcement investigative records from the Privacy Act's access provision. *Id.* ¶ 27.

---

[5] MAGIC which can access intelligence reports, enclosure, and attachments; collection requirements; evaluations of intelligence reports; knowledge briefs; and Notice of Intelligence Potential.  [ECF No. 43 ¶ 6].

[6] Given Plaintiffs' expansive requests, the FBI believed the CRS was the principal records system where responsive records would be found. [ECF No. 43 ¶ 9].

[7] Plaintiffs requested the FBI to search the following databases: Identification Division Records System, National Crime Information Center, Combined DNA Index System, National DNA Index System, Next Generation Identification Database, Terrorist Screening Records System, Law Enforcement National Data Exchange, and Data Warehouse System. [ECF No. 56 ¶ 31].

2. Records relating to intelligence activities (including covert action), intelligence sources or methods, or cryptology, intelligence sources and methods, and foreign government information which are classified at the "Secret" level pursuant to § 1.4 of Executive Order 13526. *Id.* ¶ 29. The FBI withheld these records pursuant to FOIA Exemption 1.

3. Records withheld, pursuant to FOIA Exemption 7(A), to protect the file number of a pending FBI investigation which had not been revealed to the public and in which future law enforcement proceedings are likely. *Id.* ¶ 30.

On September 18, 2019, the FBI released 12 pages of additional records that it located pursuant to a supplemental search, some of which had information withheld pursuant to FOIA Exemptions 6 and 7(C). [ECF No. 64-2 ¶¶ 6-7]. On September 19, 2019, in response to Plaintiffs' response to the Motion for Summary Judgment, the FBI submitted a Vaughn Index for the fifteen non-duplicate pages that were withheld in full. The Vaughn Index describes the documents and lists the specific exemptions for each document. *Id.* at Exhibit A.

### 3.    CIA

In October of 2017, Plaintiffs each submitted a Privacy Act request to the CIA seeking "any and all records about himself [or herself] contained within <u>any</u> CIA database." [ECF No. 43 ¶ 7A][8] (emphasis in original requests). In response, the CIA searched for records demonstrating an unclassified association with the CIA. *Id.* ¶ 8A. The CIA determined that the databases of the Office of Security and the Directorate of Operations were most likely to maintain responsive records. *Id.* ¶ 9A. These searches produced no responsive records. *Id.* ¶ 10.

With respect to whether records did or did not exist relating to a covert or clandestine relationship between the CIA and Plaintiffs, the CIA issued a *Glomar* response based on FOIA

---

[8] Defendants' Statement of Material Uncontroverted Facts contains two sets of paragraphs numbered 7, 8, and 9, but with different facts. For clarity, the Court refers to the second set of paragraphs as 7A, 8A, and 9A.

Exemptions 1 and 3. *Id.* at ¶ 11. In particular, the CIA determined that the fact of the existence or nonexistence of the requested records is classified pursuant to sections 1.1(a) and 3.6(a) of Executive Order 13256. *Id.* ¶ 12. The CIA also invoked PA Exemption J, as 32 C.F.R. §§ 1901.62(c) and 1901.21(c) exempts records maintained by the CIA that consist of, pertain to, or would otherwise reveal intelligence sources and methods from the access provisions of the Privacy Act. Finally, the CIA invoked PA Exemption K which incorporates FOIA Exemption 1.

### 4.    NSA

On February 1, 2016, Plaintiffs filed Privacy Act requests with the NSA seeking "any and all records about themselves contained within the National Security Agency/Central Security Services' Systems of Records known as Operations Records. [ECF No. 43 ¶ 21]. NSA interpreted Plaintiffs' requests as requests for NSA intelligence records and, as a result, processed each request under FOIA. *Id.*; [ECF No. 43-5 ¶ 11]. On February 17, 2016, the NSA notified Plaintiffs that it could neither confirm or deny whether it had intelligence records on Plaintiffs based on FOIA Exemptions 1 and 3. [ECF No. 43 ¶ 21]. Plaintiffs filed administrative appeals, arguing that the NSA mischaracterized their Privacy Act requests as FOIA requests. [ECF No. 43-5 ¶ 13].

On March 1, 2017, the NSA responded to the appeals, advising Plaintiffs as follows:

> As stated in the Agency's response to your request, acknowledging the existence or non-existence of any such information on any individual is, and must remain, a classified matter. Such acknowledgment would also reveal protected information about NSA activities. Your appeal is therefore denied because the FOIA and PA exempts the release of classified and/or protected information.

[ECF No. 43-5 at Attachment E]. The letters to Plaintiffs also contained three footnotes:

> The first exemption under the FOIA indicates that the FOIA does not apply to matters that are authorized by Executive Order to be kept secret and are properly classified in the interest of national defense or foreign relations. The fact of the existence or non-existence of intelligence records on any individual, including yourself, is an appropriately classified matter. Paragraph 3.6(a) of Executive Order 13526 ("Classified National Security Information") specifically authorizes this type

of response, also known as a Glomar response to such requests made under the FOIA.

The first exemption under the PA provides that records subject to the provisions of the first exemption of the FOIA are exempt under the PA. Paragraph 3.6(a) of Executive Order 13526 ("Classified National Security Information") specifically authorizes this type of response, also known as a Glomar response, to such requests made under the PA.

The third exemption under the FOIA authorizes the withholding of information specifically protected from disclosure by statute. The fact of the existence or non-existence of records responsive to your request is currently exempted from disclosure by the following statutes. Title 18 U.S. Code 798, Title 50 U.S. Code 3024(1), and Section 6, Public Law 86-36 (50 US Code 3605)

*Id.*

### C.    Procedural History

On February 12, 2018, Plaintiffs filed their Amended Complaint alleging two claims: Failure to Fulfill Privacy Act Obligations (Count I) and Arbitrary and Capricious Agency Action in Violation of the APA (Count II). [ECF No. 13]. For each claim, Plaintiffs allege that Defendants violated the Privacy Act and FOIA by withholding agency records, failing to conduct a reasonable search, and improperly applying exemptions. *Id.*

On May 15, 2019, Defendants moved for summary judgment arguing: (1) the agencies conducted reasonably adequate searches to locate documents responsive to Plaintiffs' requests; (2) the NSA and CIA properly invoked *Glomar* responses; and (3) the FBI properly invoked exemptions. [ECF No. 45]. In support, Defendants submitted declarations from officials from each Agency. *See infra* n. 3. On July 26, 2019, Plaintiffs responded to the Motion, arguing (1) the searches were not adequate; (2) the CIA and NSA failed to identify a valid justification for denying Plaintiffs' requests; and (3) the FBI failed to provide sufficient detail to justify its decision to

withhold documents—specifically the 15 non-duplicate pages that were withheld in full. [ECF No. 55].[9]

On September 19, 2019, Defendants filed their reply in support of the Motion, [ECF No. 64], the Morris Supplemental Declaration, [ECF No. 64-1], and the Second Hardy Declaration. [ECF No. 64-2]. Attached to the Second Hardy Declaration is the FBI's Vaughn Index as to the 15 pages the FBI withheld in full, [ECF No. 64-2 Exhibit A]. The FBI also notified the Court that it conducted an additional search as to Plaintiff Davis and located 12 additional pages which were released to Plaintiffs subject to redactions and exemptions. [ECF No. 64]. Plaintiffs have not filed any supplemental briefing or motions following receipt of the FBI's Vaughn Index or the 12 additional pages.

## II.    LEGAL STANDARD

"Generally, FOIA cases should be handled on motions for summary judgment." *Miscavige v. Internal Revenue Service*, 2 F.3d 366, 369 (11th Cir. 1993). Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014).

In an action to compel production under FOIA or the Privacy Act, "an agency is entitled to

---

[9]  Plaintiffs filed an unredacted version of their response under seal. *See* [ECF No. 58].

summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements." *Florida Immigrant Advocacy Center v. National Sec. Agency*, 380 F. Supp. 2d 1332, 1336-37 (S.D. Fla. 2005) (internal quotation omitted). The agency must present an "adequate factual basis" demonstrating compliance with the statute. *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1258 (11th Cir. 2008)). "[A]n adequate factual basis may be established, depending on the circumstances of the case, through affidavits, a *Vaughn* Index, *in camera* review, or through combination of these methods." *Id.*[10] An agency's affidavits are "accorded a presumption of good faith," *Florida Immigrant Advocacy Ctr.*, 380 F. Supp. 2d at 1343; and, in cases involving issues of national security, the court must "accord substantial weight to an agency's affidavit[s]," *id.* at 1337 (internal quotation omitted). Summary judgment shall be entered for the agency where "the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith." *Id.* at 1338.

## III.   ANALYSIS

As noted above, Defendants make three primary arguments in support of their Motion: (1) the searches were reasonably adequate; (2) the NSA and CIA properly invoked *Glomar* responses; and (3) the FBI properly invoked exemptions. The Court addresses each argument in turn.

### A.   The Searches Were Reasonably Adequate

The DIA's search for records responsive to Plaintiffs' request turned up no responsive documents, and the FBI's search produced no documents for Levy and limited documents for Kurzban and Davis. Plaintiffs contend that "[i]t strains credulity" that a reasonably adequate search

---

[10] "A *Vaughn* index lists the documents the agency is withholding along with a detailed justification for the agency's claim." *Miccosukee*, 103 F. Supp. 3d at 1324 n. 4.

would produce so few responsive documents. [ECF No. 55, at 14]. The Court disagrees.

FOIA and the Privacy Act do "not require an agency to show that it has identified every document that is responsive to a request, but only that 'it performed a search reasonably calculated to yield responsive documents.'" *Negley v. FBI*, 589 F. App'x 726, 729 (5th Cir. 2014) (quoting *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010)). *See also Broward Bulldog, Inc. v. U.S. Dep't of Justice*, 939 F.3d 1164, 1176 (11th Cir. 2019) ("Because the standard is one of reasonableness, the Act does not require an agency to exhaust all files which conceivably could contain relevant information.") (internal quotation omitted); *Lee*, 289 F. App'x at 380. "An agency may demonstrate that it conducted an adequate search by showing that it used 'methods which can be reasonably expected to produce the information requested.'" *Batton*, 598 F.3d at 176 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). This can be done though affidavits of responsible officials, which are entitled to a "presumption of legitimacy." *Batton*, 598 F.3d 176. Once the agency establishes that its search was reasonable, the burden shifts to the plaintiff to present evidence creating a genuine issue of material fact "as to the adequacy of the search." *Negley*, 589 F. App'x at 730. A plaintiff does not, however, establish a disputed issue of material fact simply by engaging in "speculation that as yet uncovered documents may exist . . . ." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

To establish that its search was adequate, the DIA produced the Morris Declaration and the Supplemental Morris Declaration. As detailed above, the DIA searched six databases for documents responsive to Plaintiffs' requests. The DIA first searched the Office of Security & Directorate of Operations. Once armed with Plaintiffs' full names, dates of birth, and social security numbers, the DIA searched five additional databases comprising over 3 billion records. The Court finds that the DIA's search was more than adequate. Moreover, Plaintiffs' incredulity that the DIA found no documents does not create a genuine issue of material fact.

The Court also finds that the FBI conducted a reasonably adequate search. As detailed in the Hardy Declaration and the Second Hardy Declaration, the FBI searched the CRS index and the ELSUR indices which contain records related to electronic surveillance sought, administered, and/or conducted by the FBI since January 1, 1960. While Plaintiffs contend that the FBI should have searched other databases, the law does not require the FBI to search every database. *See Broward Bulldog*, 939 F.3d at 1178. Moreover, in the absence of evidence to the contrary, the Court finds credible Mr. Hardy's representations that the CRS index and the ELSUR indices were the appropriate databases to search given Plaintiffs' requests. *See Batton*, 598 F.3d at 176 (an agency's declaration establishing that a search was adequate is entitled to a presumption of legitimacy.).

Plaintiffs "attempt[] to use the 'oft-used but rarely successful strategy of impugning the adequacy of the search by identifying documents that [they] claim would have been produced had the [DIA and FBI] proceeded properly.'" *Scott v. Internal Revenue Service*, No. 18-cv-81742, 2021 WL 256417, at *10 (S.D. Fla. Jan. 26, 2021). But, Plaintiffs' argument misses the mark. Indeed, the issue is not whether other documents may exist, "but rather whether the search for those documents was adequate." *Id.* (quoting *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)). *See also Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.").[11] Accordingly, the Motion shall

---

[11] Plaintiffs argued in their Response that the DIA's decision to search the RMT database was flawed because nothing in Plaintiffs' requests suggest that they communicated electronically with DIA. [ECF No. 55 at 21]. Plaintiffs have an incomplete understanding of the records contained in the RMT database. As detailed in the Morris Supplemental Declaration, the RMT database is not an email server. [ECF No. 64-1 ¶ 5]. Rather, it contains multiple forms of intelligence reporting including Intelligence Information Reports (IIRs) and finished intelligence products. *Id.* In addition, Plaintiffs' argument that the DIA's search was inadequate because it did not search the InfoSphere Management database is based on outdated and inaccurate information. The InfoSphere Management database is no longer an operational DIA database and, therefore, cannot be searched. *Id.* ¶ 10. However, the information previously found in the InfoSphere Management database is now largely captured in databases searched by the DIA. *Id.*

14

be granted as to the adequacy of the searches.

    **B.**    ***Glomar* Responses**

In response to Plaintiffs' requests, the NSA issued a *Glomar* response detailing that it could "not confirm or deny publicly in any case whether or not it has such records, as doing so would reveal whether or not NSA engaged in certain, or any, intelligence activities, and/or did or did not target individual communications for collection." Thompson Decl. ¶ 18. The NSA based its *Glomar* response on FOIA Exemptions 1 and 3. Similarly, with respect to the existence or non-existence of records relating to a covert or clandestine relationship between the CIA and Plaintiffs, the CIA issued a *Glomar* response stating that it "could neither confirm nor deny the existence or nonexistence of records responsive to the request, since the fact of the existence or nonexistence of records was properly classified and protected from disclosure under FOIA exemptions (b)(1) and (b)(3) and Privacy Act exemptions (j)(1) and (1)." Shiner Decl. ¶¶ 11, 18, 21.

Where "the fact of the existence or nonexistence of agency records itself falls within a FOIA exemption, the agency may refuse to confirm or deny the existence of the requested records." *Knight First Amendment Inst. at Columbia Univ. v. CIA*, 11 F.4th 810, 813 (D.C. Cir. 2021) (internal citation omitted). "In considering a *Glomar* response, courts apply the general exemption review standards established in non-*Glomar* cases." *Id.* "The standard is not burdensome, and '[u]ltimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible.'" *Judicial Watch, Inc. v. Department of Justice*, 21-cv-01216, 2022 WL 2828987, at *2 (D.D.C. July 20, 2022) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). "When a government agency issues a [*Glomar*] response, it must provide a public affidavit explaining in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records." *Taylor v. National Sec. Agency*, 618 F. App'x 478, 482 (11th Cir. 2015) (internal quotation omitted). *See*

*also Knight*, 11 F.4th at 818 ("Agencies may carry their burden of proof through declarations explaining why a FOIA exemption applies.").

### 1. Official Acknowledgment

Plaintiffs argue that the CIA and NSA's *Glomar* responses fail with respect to Kurzban and Levy[12] because "it strains credulity to suggest" that the agencies would not have an intelligence interest in them in light of the agencies' publicly acknowledged intelligence-gathering activities. The Court disagrees.

"[W]hen an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information." *ACLU v. CIA.*, 710 F.3d 422, 426 (D.C. Cir. 2013). The burden is on the plaintiff to "point[] to specific information in the public domain that appears to duplicate that being withheld." *Id.* (internal quotation omitted). "An agency's official acknowledgment of information by prior disclosure, however, cannot be based on mere public speculation, no matter how widespread." *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007). To establish that an agency has officially acknowledged otherwise exempt information, a plaintiff must establish that the requested information: (1) is as specific as the information previously released; (2) matches the information previously disclosed; and (3) already has been made public through an official documented disclosure. *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).

Plaintiffs point to five prior disclosures that they claim constitute waivers of the CIA and NSA's right to issue *Glomar* responses. These include: (1) a CIA Directorate of Intelligence narrative, dated February 18, 1988, titled "Haiti: The Churches, Voodoo, and Politics [ECF No. 55-8]; (2) a document titled "Session Information," dated March 9, 1993, that briefly references a

---

[12] Plaintiffs do not appear to contest the agencies' *Glomar* responses with respect to Magda. The Court notes, however, that its findings with respect to the CIA and NSA's *Glomar* responses apply equally to each of Plaintiffs' requests.

movement to "reestablish Aristide as the legitimate president of" Haiti  [ECF No. 55-9]; (3) a transcript of an interview of former President Clinton on NBC's <u>Meet the Press</u>, on November 7, 1993, which discusses, among many other topics, the United States' policy to reinstate Mr. Aristide as president of Haiti [ECF No. 55-10]; (4) a disclosure from the Clinton Library containing a background paper regarding political assassination in Haiti and a memorandum regarding executive privilege [ECF No. 55-11]; and (5) a disclosure from the Clinton Library containing a letter from Kurzban to then Secretary of State Warren Christopher, dated December 14, 1994, complaining of alleged unlawful interceptions of international phone calls made by Haitian President Jean-Bertrand Aristide, by the NSA, while Aristide was residing in the United States. [ECF No. 55-12].

The first four documents do not reference any of the Plaintiffs by name and in no way constitute an acknowledgement by the CIA or the NSA that they have records relating to Plaintiffs. Accordingly, Plaintiffs have not established that the information requested matches the information previously disclosed. *See Fitzgibbon*, 911 F.2d at 765. With respect to the Clinton Library's disclosure of Kurzban's letter to Secretary of State Christopher, this release was by the Clinton Library,[13] not the CIA or the NSA. Even so, "[d]isclosure by one federal agency does not waive another agency's right to assert a FOIA exemption." *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015). As a result, subject to limited exceptions not relevant here, "only the CIA [or NSA] can waive its right to assert an exemption to the FOIA." *Knight*, 11 F.4th at 816 (internal quotation omitted). Accordingly, the Clinton Library's release of Kurzban's letter is not an acknowledgment by the NSA (or the CIA) that it has any records relating to Kurzban.

Plaintiffs nonetheless argue that they can establish official acknowledgment by showing,

---

13 The William J. Clinton Presidential Library is operated by the U.S. National Archives and Records Administration ("NARA"). *See Smith v. United States National Archives and Records Administration*, 415 F. Supp. 3d 85, 89 (D.D.C. 2019) ("[T]he William J. Clinton Presidential Library . . . [is] operated by NARA.").

on the basis of official disclosures, that it is "neither logical or plausible" for the CIA and the NSA to deny the existence of responsive records. *ACLU*, 710 F.3d at 430. Not so. First, *ACLU* did not overturn the three-part test set forth in *Fitzgibbon. See James Madison Project v. Dep't of Justice,* 302 F. Supp. 3d 12, 21–22 (D.D.C. 2018) (noting that the courts continue to apply "*Fitzgibbon*'s three-pronged test in the *Glomar* context subsequent to *ACLU*, demonstrating that the [courts] plainly ha[ve] not jettisoned the specificity requirement."). As a result, Plaintiffs still must establish that the information requested is as specific as the information previously released, match that which was previously disclosed, and was already made public through an official disclosure. *Fitzgibbon*, 911 F.2d at 765. As set forth above, Plaintiffs have failed to do so.

      Moreover, the facts in *ACLU* are distinguishable from the facts presented here. In *ACLU,* the CIA invoked *Glomar* to avoid confirming or denying that it was involved or interested in drone strikes. The appellate court held that, based on U.S. Government officials' open acknowledgment of the United States' use of drones, it was not logical or plausible for the CIA to claim that it would be revealing something that had not already been openly acknowledged. Here, Plaintiffs have not established that the NSA or CIA have openly acknowledged any records about any of the three Plaintiffs. And, unlike *ACLU,* where the plaintiff was requesting records about a government program, Plaintiffs here seek information about themselves. As Defendants aptly note in their Reply:

> It is the difference between asking the FBI in a FOIA request the number of times it engaged in electronic eavesdropping authorized by a court in a given year, versus asking the FBI whether it engaged in electronic eavesdropping of the requester in a given year. The fact that electronic eavesdropping is provided for in the United States Code, subject to judicial approval, is publicly available information. Whether the FBI obtained a court order to eavesdrop on a particular individual is not.

[ECF No. 64 at 12]. Accordingly, the Court finds that Plaintiffs have not established that the NSA or the CIA have officially acknowledged the existence of records related to Plaintiffs.

## 2. NSA's Exemptions Tied to Glomar

Plaintiffs also argue that the NSA fails to identify an applicable Privacy Act exemption to justify its *Glomar* response.[14] The Court disagrees. In response to Plaintiffs' administrative appeal, the NSA clearly indicated that the information requested under the Privacy Act was exempted "under the first exemption under the PA [which] provides that records subject to the provisions of the first exemption of the FOIA are exempt under the PA." [ECF No. 43-5 n. 2]. This language clearly tracks Privacy Act Exemption K(1)—the "first exemption" under the heading "Specific Exemptions" in the Privacy Act.[15]

Moreover, the Court finds that PA Exemption K(1) applies here. "[T]he Privacy Act expressly incorporates Exemption 1 of the FOIA, under which an agency may withhold records (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) [which] are in fact properly classified pursuant to such Executive order." *Taylor*, 618 F. App'x at 482; *see also Wheeler v. CIA*, 271 F. Supp. 2d 132, 137 n.6 (D.D.C. 2003) (holding that FOIA Exemption 1 and PA Exemption K(1) "track each other, so that the fundamental question is whether the requested information is exempt under FOIA."). The NSA, via the Thompson Declaration, more than adequately detailed how the NSA's Signals Intelligence activities are classified under FOIA Exemption 1 and, therefore, under the Privacy Act. *See* ECF No. 43-5 at 10-13.[16] *See Broward Bulldog*, 939 F. 3d at 1183 (holding that courts must give "great deference" to an agency's invocation of FOIA Exemptions 1 and 3.).

---

14 To the extent Plaintiffs sought intelligence records, the NSA interpreted Plaintiffs' requests as under FOIA and processed them under FOIA.

15 Defendants clarify further in their Reply that the language "first exemption of the Privacy Act" references Privacy Act Exemption K(1). [ECF No. 64].

16 Plaintiffs' argument that the NSA failed to identify a promulgated rule that authorizes it to issue a *Glomar* response pursuant to Privacy Act Exemption K(1) also falls short. In their Reply, Defendants identify 32 C.F.R. § 322.7(a) which provides that "[a]ll systems of records maintained by the NSA/CSS and its components shall be exempt from the requirements of 5 U.S.C. 552a(d) pursuant to 5 U.S.C. 552a(k)(1) to the extent that the system contains any information properly classified under Executive Order 12958 and that is required by Executive Order to be kept secret in the interest of national defense or foreign policy . . . ."

Accordingly, the Court finds that the NSA properly identified an applicable exemption under the Privacy Act to justify its *Glomar* response.

### 3. Breadth of Claimed Exemptions

Plaintiffs' final effort to challenge the NSA and CIA's *Glomar* responses is to claim that the agencies have taken extreme positions and fail to specifically explain how responding to Plaintiffs' specific requests might endanger national security. Plaintiffs' argument is without merit.

In her declaration on behalf of the CIA, Ms. Shiner stated that the CIA "refuses to confirm or deny maintaining records that would show a classified association with the CIA in conjunction with Exemptions 1 and 3, because disclosing that fact would tend to reveal 'intelligence activities (including covert action), [or] intelligence sources or methods' within the meaning of section 1.4(c) [of Executive Order 13256]." ECF No. 43-4 ¶ 34. She also details that confirming or denying the maintenance of records would damage national security. *Id.* ¶ 40. In his declaration on behalf of the NSA, Mr. Thompson details how the NSA's Signals Intelligence Activities are classified under FOIA Exemption 1 and protected from disclosure by statute, and thus are encompassed by FOIA Exemption 3. [ECF No. 43-5 ].

As detailed above, courts are to accord substantial weight to an agency's assertion that disclosure could reveal intelligence activities or threaten national security. *See Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007) ("courts are required to give 'great deference' to the CIA's assertion that a particular disclosure could reveal intelligence sources or methods."); *Center for Nat'l Security Studies v. U.S. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003) ("We have consistently reiterated the principle of deference to the executive in the FOIA context when national security concerns are implicated."); *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) ("Moreover, in national security cases like this one, Congress has instructed the courts to accord 'substantial weight' to agency affidavits.") (internal quotation omitted). The Court finds

that, based on Ms. Shiner's and Mr. Thompson's declarations, the CIA and NSA have justified their *Glomar* responses. And, beyond general speculation, Plaintiffs do not present a genuine issue of disputed material fact to rebut the CIA's and NSA's responses. Accordingly, the Motion is granted as to this issue.

      **C.**      **The FBI Properly Invoked Exemptions**

The FBI withheld 277 pages of documents in part. In their response to the Motion for Summary Judgment, Plaintiffs only challenge the withholding of the 15 nonduplicate pages that were withheld in full. Specifically, Plaintiffs argue that the FBI failed to produce a Vaughn Index as to those documents. As part of Defendants' reply in support of their Motion for Summary Judgment, the FBI filed a Vaughn Index attached to the Second Hardy Declaration. [ECF No. 64-2 at Exhibit A]. Plaintiffs have not challenged the Vaughn Index.

      **1.**      **Vaughn Index**

The Court finds that the FBI's Vaughn index is adequate. It provides the bates numbers for the documents, the date of each document, a description of the documents, the applicable exemptions, and an explanation of each exemption. *See Block v. United States Dep't of Justice*, No. 19-cv-03073, 2022 WL 683569, at * 3 (D.D.C. Mar. 8, 2022) (holding that an agency's Vaughn index was adequate where "[i]t describes each record, notes the reasons for the withholdings, and provides comments explaining why the applicable exemptions apply.").

      **2.**      **Specific Exemptions**

Plaintiffs have not moved to strike the Vaughn index or filed a supplemental brief contesting the exemptions asserted therein. Where a plaintiff does not oppose an agency's assertion of a particular exemption, the Court is not required to "assess the legal sufficiency of each and every exemption invoked by the Government . . . ." *Block*, 2022 WL 683569, at 3 (quoting *Shapiro v. DOJ*, 239 F. Supp. 3d 100, 105-06 n.1 (D.D.C.)). Rather, the Court "may infer from the non-

opposition . . . that the plaintiff no longer seeks those documents." *Id.* (citing *Shapiro*, 239 F. Supp. 3d at 105-06 n. 1). Accordingly, because Plaintiffs have not filed anything with the Court contesting the FBI's withholdings as set forth in the Vaughn Index, it infers that they no longer seek those documents.

Even so, the Court finds that the FBI has met its burden to justify those withholdings. *See Miccosukee*, 516 F.3d at 1258 ("[A]n agency has the burden of proving that it properly invoked any FOIA exemptions when it decided to withhold information."). The FBI withheld documents under FOIA Exemptions 1, 3, 6, 7(A), 7(D), and 7(E). In reviewing the Hardy Declaration, the Second Hardy Supplemental Declaration, and the Classified Hardy Declaration, the Court finds that the FBI has adequately shown that it properly invoked the FOIA Exemptions. In particular, the Court provides substantial weight to Mr. Hardy's declarations and defers to the FBI's decision to withhold classified records implicating national security under FOIA Exemptions 1 and 3. *See Broward Bulldog*, 939 F.3d at 1183 (holding that agency decisions to protect classified information implicating national security are entitled to great deference). Moreover, the Court finds that the FBI has adequately addressed how the withheld documents, if disclosed, would violate federal statutes governing release of information; would cause a clearly unwarranted invasion of personal privacy and could reasonably be expected to constitute an unwarranted invasion of personal privacy; could reasonably be expected to disclose the identity of confidential sources or information provided by confidential sources; and/or would disclose techniques and procedures used for law enforcement investigations, the disclosure of which could reasonably be expected to risk circumvention of the law. Accordingly, the Motion is granted as to the FBI's withholding of documents.

## IV.   CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment, [ECF No. 45], is granted.  The Court will enter a separate judgment.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of March, 2023

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE